### Evans v. Lima
[Cite as 2 AOA 160]

Case No. 1-88-42
Allen County, (3rd)
Decided March 30, 1990

R.C. 124.40

*Mr. David A. Rodabaugh, City Law Director, 215 North Elizabeth St., Lima, OH 45801, For Appellant.*

*Mr. Richard E. Siferd, Attorney at Law, 210 Colonial Building, Lima, OH 45801, For Appellee.*

BRYANT, J.

This is an appeal from a money judgment for plaintiff, Cecil Evans, entered by the Allen County Common Pleas Court upon a claim for an unpaid salary increase and the value of related fringe benefits allegedly due plaintiff from defendant, The City of Lima, Ohio.

At the times relevant to this action, Appellee, Evans, plaintiff below, was employed by The City of Lima, Ohio as its Building and Zoning Administrator, a civil service position then classed at range twenty-five of the uniform pay scale for its employees established by the City. Evans had attained, after years in service, Step E, the highest pay step attainable in the pay classification for his job.

Although the course of events is not entirely clear from the record, it appears that Evans believed his job duties and responsibilities had increased during his term and since the position was originally classified in pay range twenty-five. He asked his superior for a pay raise.

The trial testimony of the Civil Service Board Secretary reveals that the Board received in January 1987, "a request from the Finance Committee of the Lima City Counsel * * * for the Board to review the proposed modification of pay raise for the position of Building and Zoning Administrator for the City of Lima."

After investigation, the Board, by letter dated June 30, 1987, forwarded its written approval for reclassification of the position of Building and Zoning Administrator.

The position of the Board's letter underlying this cause and the trial court's judgment is:

"Therefore, the Lima Civil Service Board, in consideration of the tentative approval by the Public Works Director, the Personnel Director and apparently the Mayor of this City to reclassify the position of Building and Zoning Administrator from present pay range 25 to pay range 28 hereby approves same effective the first pay period within the month of July, 1987, and

thereafter and will assume appropriate action by Council regarding this pay reclassification."

In his testimony concerning the origin of the Board's letter of approval, the Board Secretary explained that the request for review of the position in question had not come to the Board through usual channels or procedure.

In its entirety, the Board's letter to Council implies that the Board considered Council's request to be one for approval of contemplated action concerning reclassification of Evans' job and his promotion to fill it as reclassified.

Again, the testimony of the Board Secretary explains:

"A I think the letter indicates that it was perhaps in '86 the then Public Works Director, Dave Grisez, had made a request to the administration for the modification.

Then in December the Personnel Director of the City of Lima sent a letter to Council requesting the pay increase. I'm going to say normally it would come to the Board first, but the current administration, for some reason, does things a little different than normally the case.

Then Council in January sent their request to us along with further letters all indicating to us that the department head, Mr. Grisez, and his successor then, Mr. Lallier, the Personnel Director and the Mayor of the City of Lima all suggesting or recommending a pay increase."

The Secretary explained further that a job might be reclassified for one or more reasons, and that "[a] a request for a pay raise * * * is treated as a reclassification, because a pay raise never goes to an individual.

"It goes to the position they occupy."

Council took no action after receipt of the Board's letter of June 30 to implement the approved reclassification of Evans' job or to raise his pay. Evans retired from his city employment November 1, 1987.

On October 1, 1987, Evans filed his Complaint in Common Pleas Court seeking judgment for a sum of money representing the difference between the salary he was paid from July 1, 1987 until his retirement, and the salary authorized for his job if reclassified as approved by The Civil Service Board on June 30.

The trial court overruled the City's motion of dismiss the Complaint, and at trial, without a jury, took evidence and heard the argument of counsel.

Upon consideration of written arguments and the evidence, the trial court entered judgment for Evans in the sum of $1,722.24 for unpaid salary increase and related fringe benefits.

On appeal, the City asserts two assignments of error:

"FIRST ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO DISMISS PRIOR TO TRIAL, DURING TRIAL, AND IN ITS CLOSING ARGUMENT.

"SECOND ASSIGNMENT OF ERROR: THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

Before, during and after trial, the City urged its motions to dismiss the Complaint for failure to state a claim upon which relief can be granted. Civ. Ruls. 12(B) (6), 12(H) (2) and 41(B) (2) authorize such motions when timely asserted as by the City in the proceedings below. Therefore no procedural issue confronts us in this regard, permitting us to proceed to test Evans' claim to determine whether or not judicial relief can be granted upon it. Evans complaint claims a right to relief arising from a debt for an unpaid salary increase due him but unpaid by the City.

The trial court determined that Lima Civil Service Board Rule 18, Sections 6 provides that [c]lassifications or reclassification in all cases is effective upon approval by the Board, and concluded that the Board's approval of reclassification of Evans' job contained in its June 30, 1987 letter to Council was self executing. Apparently, the trial court assumed that reclassification implied automatic promotion and pay raise for the holder of the position reclassified.

Judgment was entered accordingly in a sum calculated from the evidence presented at trial. We note, in passing, that the increase awarded to Evans amounts to the five percent mandatory increase upon promotions refused to by the Board Secretary in his trial testimony and as shown by the pay scale charts and stipulations of counsel entered into evidence at trial.

The trial court was correct in finding that the plain language used in Lima Civil Service Rule 18, Section 6 provides that "classification or reclassification shall take effect upon Board approval."[1] However, the trial court erred by misapplying Section 6, equating approval of reclassification with legislative effectuation of reclassification and with automatic promotion with attendant pay raise for one employee whose job is approved for reclassification.[2]

Section 1 of the Charter of The City of Lima, Ohio, provides, in part, that the City "by ordinance passed by Council" may "create, establish, abolish and organize offices and fix the

salaries and compensation of all officers and employees of the City of Lima."

Section 84 of the charter provides further, in part, that "Council shall fix by ordinance the salary or rate of compensation of all officers and employees of the City * * *."

By charter, the legislative powers of the City of Lima are vested in its Council.

The Mayor, by charter provision, Section 68 of the Charter, is the "appointing authority of City for all classified and unclassified positions except in those departments where the Charter provides for the election of the head of said department."

Employees of the City of Lima are not classified by employment of salary. Rather, pursuant to Charter Section 90 and related ordinances and rules, Lima has established a comprehensive system of classification of civil service positions according to duties and responsibilities while standardizing salaries for those positions based on the same considerations. By the provisions of Charter Section 90(a), the Civil Service Board is charged with responsibility for classification and standardization of civil service positions.

The seven sections of Civil Service Rule 18 approved by Council provide for classification and standardization of civil service positions. Procedurally, these sections create the necessity of the Civil Service Board's review of the proposed actions of counsel affecting classification or standardization of City jobs.

Hence, Section 3 provides for review by the Board prior to Council action with transmittal to Council of the Board's approval or disapproval.

Sec. 3. Approval of salary and position proposals.

"All proposals relating to salaries and to the creating, redesignating or abolishing of positions in the classified service shall be submitted to the Board for its consideration prior to the final action thereon by Council.

"After consideration thereof, the Board shall transmit said proposal to Council together with the Board's action thereon."

Similarly, Section 4 provides for prior review by the Board of proposed job creation by an appointing authority prior to transmittal of such proposals to Council for its consideration and action.

In this context, thus, Section 6 must be viewed and applied. Section 6 in its entirety is:

"Sec. 6. Determination of classification.

"The Board shall, whenever circumstances warrant, amend the specifications for any class

or position, and abolish, merge or divide existing classes or positions, or create new classes.

"Classification or reclassification in all cases shall take effect upon approval by the Board.

"The Board may likewise from time to time, of its own motion, make investigation of all or an positions in the service, and propose changes in classification whenever the facts warrant such action."

Clearly the final paragraph above contemplates that action proposed by the Board is subject to legislative review and action. We believe, therefore that the initial paragraph necessarily contemplates circumstances of proposal or prior action on initiative other than the Board's to relieve it of otherwise apparent redundancy.

Finally, with respect to Section 7 of Rule 18, we believe further action by both Council and the appointing authority is necessary to confirm and appoint the employee who is to hold a reclassified job in the circumstances presented here. That Section is, in pertinent part:

"Sec. 7. Change of duties.

"Whenever the duties of a position become changed so as to require reclassification of the position, the incumbent thereof, with the approval of the Board, may be retained in the position under the new classification, or at his option, may be either transferred to a vacant position in the class to which the position was formerly allocated, or placed on the re-employment list for that class.

"Whenever the position is reclassified to a higher class, the incumbent of such position may be advanced thereto if he can demonstrate his qualifications by passing a non-competitive examination for the class, or if he is unable to meet such noncompetitive requirements he shall be continued in the service under his old title and at his old salary."

The automatic promotion of Evans assumed by the trial court appears to be precluded by the foregoing Section. Indeed, our review of the pertinent rules reveals no instance where the unaided approval of the Board supersedes the legislative act of Council or the discretionary hiring among equals or retention of an incumbent upon promotion by the appointing authority.

We perceive from the record that the Civil Service Board gave its approval to that which it considered to be contemplated action. Apparently, Council chose not to act legislatively upon the approval reclassification. The record discloses no action of the appointing authority to promote Evans otherwise within the rules. Without such further action. Evans' salary was not

automatically increased upon reclassification of his portion. Without such a pay increase, the record demonstrates no debt owing by the City of Lima to Evans for unpaid wages. Absent such a debt created by automatic pay raise, then, Evans' complaint fails to establish the debt required to sustain the trial courts' judgment. Accordingly appellant's assignments of error are sustained.

Accordingly for error of the trial court disclosed by the record the judgment of the trial court is reversed and the cause is remanded to the Common Pleas Court of Allen County with instructions to dismiss the Complaint.

*Judgment reversed.*

EVANS and MILLER, JJ., Concur.

---

[1] A court, in the guise of statutory interpretation, may not read meaning into a law, but must bring meaning out if it. 57 O. Jur 3d 54. The court may not legislate by adopting a meaning contrary to the plain meaning of the statute within the entries legislative context in which it appears.

[2] There is no need to interpret statutory terms defined by the legislative authority which has used them in its legislation. Some of the terms defined by the council approved civil service board rules and relevant to the issues here presented are found in Rule 1 of the Rules of the Lima Civil Service Board, as follows:

"Rule 1. DEFINITION OF TERMS

"The following terms hereinafter set forth, whenever used in these rules or in any regulation enforced thereunder, shall be interpreted and construed as follows:

"* * *

"4. The term "Council" signifies the Council of the City.

"* * *

"8. The term 'classification & standardization' refers to the arrangement in schedule form of the titles, offices and positions in the several classes, and grades.

"9. The term 'grades' refers to the subdivision of the classified service, for the purpose of promotions and is based on the relative character of the duties and the salaries attached to the grades therein contained. The terms 'rank' and 'grade' shall be considered synonymous.

"10. The term 'class' refers to a position or a group of positions established in the classified service sufficiently similar in respect to duties, responsibilities and qualifications requirements to be designated by the same descriptive title for the purposes of recruitment and promotion.

"11. The term 'position classification' refers to a written statement describing the duties, responsibilities, qualifications and requirements of a specific class or position.

"12. The term 'compensation' refers to the salary attached to an office or position, whether computed by the hour, day, week, month or year.

"13. The term 'appointing authority' shall mean the officer, commission, board or body having the power of appointment to or removal from a position in the classified service.

"* * *

"26. The term 'promotion' signifies any advancement in rank or any increase in salary beyond the limit fixed for the grade by the rules."